Case No. 14-7071. Dick Anthony Heller, et al. Appellant v. District of Columbia, et al. Mr. Holbrook for the Appellant, Ms. Allaphan for the Affiliate. Mr. Holbrook for the Appellant, Ms. Allaphan for the Affiliate. Mr. Holbrook for the Appellant, Ms. Allaphan for the Affiliate. All right, Mr. Holbrook, good morning. Thank you, Your Honor. Good morning. I'm Stephen Holbrook for the Appellant. May the Court please. This case involves the issue of whether the most restrictive burdens on Second Amendment rights nationwide are narrowly tailored and constitute a close fit for the goals, the governmental objectives, of protection of police officers and crime control. This Court remanded the case in 2011 for the District to provide meaningful evidence, not mere assertions, to justify its predictive judgments. And after going through this period of discovery and summary judgment, instead of providing meaningful evidence, the District has provided the same ipsy-dixit that it provided before in the form of mere assertions without facts or data to justify it. Can I ask you one thing? Sometimes in other cases where we've had these types of remands, like Turner itself, the case actually goes to trial with fact-finding, a full record being made, and then the constitutional decision is based on that full record. Is it your view that part of the problem here is that summary judgment was wrong, that there should have been an actual trial and fact-finding, or is your view that a trial wouldn't change anything and it's simply the decision itself? I don't think a trial would have changed anything, Judge Millett. I think what happened here was that in the first go-around, there were opinions with no data or facts to support them. The case was remanded. On summary judgment, it was the same thing. There were the expert reports filed. We objected to those because they lacked facts or data. They're basically on appeal to authority, the three law enforcement experts. I don't see what more a trial would have added to this process in terms of getting facts and data to back up the predictive judgment stated by the district. So you believe the district court took all the record, facts, and the like most favorable to you in making this decision? Well, no, I don't. Do you think there are disputed facts? Do you dispute some of the facts that the district court and the government rely on? Well, the district court basically discounted the facts that we set forth. We had expert reports. That normally sounds like a summary judgment problem, right? That's a summary judgment problem, yes. I don't see where, for example, credibility of witnesses, things like seeing them directly would have really helped. The law enforcement experts testified they thought these were good ideas without any data to support them, and for them to say that orally in a trial would really not be any different in terms of the information that would be available for the district court to review. You don't need fact-finding on the burden, fact-finding on the fit? You don't need or want any of that? The fact-finding on the burden was something, the case was not remanded so much for the burden as for the district to come forward and justify these regulations. The burdens were undisputed in this case. We filed declarations by the plaintiffs, and the district took some depositions and never disputed any of the burdens, the burdens in terms of the time it takes to register guns, the fact that if they're deregistered, the chances that maybe you won't get the information or the trouble that you have to go through to re-register, facts like that. In fact, that's a law that doesn't exist anywhere else in any state nationwide. But the burdens were really undisputed, so I'm not sure that in terms of what the district court did here, that there would have been any further information in a trial that would have been rendered. Is there still a facial challenge or is it just as applied? Do you have both? We have both challenges, yes, Your Honor. This is, as I say, it's a law that doesn't exist in any state nationwide. There were two jurisprudential issues, if I could mention very quickly. One was the principle that the district, that a governmental body has to demonstrate that the harms are real and that, in fact, the means chosen to address those harms would alleviate the harms in a direct and material way. That's from Turner 1. The district says that's a stray phrase. It's not binding. That was only a plurality opinion. But it's been established jurisprudence in this court and the Supreme Court both before and after Turner 1, most recently in Edwards v. D.C., which invalidated last year the tour guide requirement that they take a test in the District of Columbia. There was no real facts that justified it. The second jurisprudential issue that we have, which I'll just briefly mention, is the double-deference theory that the district court set forth in terms of if it's gun policy, if it involves Second Amendment rights, then we doubly defer to the legislature. In this case, there was no justification. That double-deference theory, if you trace the cases back in support of that, it basically goes back to Turner 1 and 2, which is not a double-deference theory. We're talking about intermediate scrutiny for this right, and that was the standard of review that this court chose in the case here before. And there's no special rule for Second Amendment rights that McDonald's case by the Supreme Court held that it's not a second-class right and that one uses the same tools of interpretation as one would for the First Amendment or other rights. Do you agree that the fact that D.C. is filled with lots of diplomats and government officials, parades, those types of things, creates an increased vulnerability that the government can address? Absolutely. We don't contest that at all, and we think that law enforcement efforts should be directed to that. But there's no evidence, either in logic or in facts or data, that this registration requirement has anything to do with that. So D.C. could do something that maybe other cities or jurisdictions might not need to do. I know I got that you think they can't do this, but when you keep saying they have something different from every other jurisdiction, that by itself does not indict it, given its unique needs and concerns here. Right, Your Honor, but there's a floor, and that's what the Heller v. D.C. case by the Supreme Court held. The district made the same arguments that it made here about its unique character, and as a matter of fact, the Supreme Court invalidated the handgun ban, and it simply said this is not – well, it didn't do intermediate scrutiny. It did it as a matter of law, but there's no narrow tailoring here. There's just a disconnect completely between requiring law-abiding citizens to register guns, people who wouldn't misuse guns whether they were registered or not, and the requirements that exist in terms of like a potential assassin, for example, would not be dissuaded in any way by registration requirements. So throughout all the D.C. provisions, there's just a disconnect. They made a list of reasons why they think registration is necessary, and the most critical reason that they set forth was officers can conduct checks to see whether there might be a gun on the scene when they go on a call, and it turns out that that was just a made-up reason. It did not exist. MPD does not do that. The other reasons that they gave in their list were things like that way you can arrest people for unregistered guns, and this court held that that was just basically a duplicative argument that it didn't have any meaning. You know, it was self-defining that you could arrest people if they have an unregistered gun. That was certainly a law enforcement purpose. In fact, the only law enforcement— Let me ask you about that, because it's been suggested that by requiring— as you said, if registration is required, only law-abiding citizens will register their guns, correct? Yes, Your Honor. So if somebody then—the police stop somebody, perhaps in a vehicle, and there's an unregistered gun, doesn't that suggest that they may not be a law-abiding citizen and have some reason for not having registered their gun that just as well interdict them before they commit a crime? Your Honor, for law-abiding practice in the D.C. Superior Court, it's well known that most of the people arrested for unregistered guns are basically law-abiding people who didn't know about it. They're people passing through town. They're not criminals. The district suggests in their briefs that people who have unregistered guns are likely to be trafficking them or to be involved in robberies or things like that. It's totally unrealistic. No other jurisdiction nationwide requires all guns to be registered except for the state of Hawaii. And just to simply— Do you have any data about the Superior Court? Pardon? Do you have any data about what you just said? Your Honor, we don't have data about that. There's no data either— Well, there is a lot of data in the record about the lack of criminal activity by persons with registered guns. There's also data that long guns, for example, are virtually never, ever used in crimes, whether registered or unregistered. There were, I think, three homicides out of 383 homicides over a three-year period committed with long guns. In 98, some crimes were committed with hands or feet or with blunt instruments or sharp objects. So as this Court held in the original opinion, long gun registration is novel. It's not historical, and there's no justification that's been set forth. I mean, Judge Millett's question about the unique characteristics of the district, a person who would misuse a long gun would not be a person who would be dissuaded in any way by a registration law. And so there's just been no connection shown between long gun registration, the cancellation of registrations every three years— Your Honor, in your last time around, we said that registration is not a significant burden, right? A handgun registration for certain simple facts and not the novel requirements that were involved in handgun registration. So we said we were mad that it would leave an open question with respect to long guns. Yes, Your Honor. The district now comes in and says, well, look, if it wasn't burdensome to register handguns, it's not burdensome to register long guns. The district's educated on that. What's wrong with that syllogism? Your Honor, we're talking about exercise of a constitutional right. This is not a requirement for people who want to carry a gun on the street, a concealed weapon. This is basic keeping of a firearm in your own home, the basic Second Amendment right. And to require registration, the record does reflect the burdens in terms of hours and expense. There's also the fact that— Are there different for long guns than for handguns? There's no different requirements for either one, Your Honor. The burdens are the same. Right. And aren't we committed to the proposition that those burdens are not a significant imposition of burden on the Second Amendment right? For purposes of handguns, which have always been regulated much more tightly than long guns, and that was the point of the prior decision. But what's—just in terms of the doctrinal framework, I'm trying to see where's your opening where the registration requirements for handguns are not burdensome for Second Amendment purposes. So it's de minimis. How do you get past that when you turn to long guns? If the registration is de minimis, it's de minimis. Right, and this Court made no finding that it was de minimis for long guns. The Court said that will be a question over remand. I understand that, but now it turns out that the registration requirements are exactly the same. They're the same. I mean, that was known before, but in terms of the object being regulated, we would make that distinction that there's more—this Court found there was more justification for registering handguns and for requiring the burdens that do exist, and there's less justification on long guns. This Court said it might as well have been written in invisible ink in terms of justification for that. And we think you can distinguish between the burdens required for something that has more risk versus the same burden that might be required for something that has virtually no risk, and particularly where there's been no— So you're saying we can take account of the risk in that—in asking the threshold question of whether this is a burden, a significant burden. Yes, Your Honor. Instead of—as the framework seems to suggest, first we have to get past the— we have to determine that it's a significant burden and then determine whether it's justified by the risk. The burden is the same, and the reason for the burden is a lot less in regard to long guns, and I think that's what we got out of the first opinion, and I think that's still the case now, that it's a burden that, in terms of lost employment, expense, there's a number of things. It's not a burden that's imposed anywhere else in the country, and for that reason we think that it just doesn't meet the requirement of narrow tailoring. There's been no justification for it in terms of, if we look at Rule of Evidence 702, for example, people—the witnesses for the district just say it's a good idea. If they require registration of handguns, it's a good idea to register long guns. Again, given the unique needs of D.C., we just want to know who owns— when we're designing a prairie route, we want to know, or a travel route for a motorcade, we just want to know what buildings are going by that have long guns in them. Well, the district never set forth that as a justification. It is. It's in the report. It's in the report. And, in fact, one could assume that in any residence there could be a gun, and, as a matter of fact, that the kind of people who— Well, they gave that justification, which I found from the report. I'm not smart enough to think of this stuff myself, but that was in their report. Would that be a justification that would then trigger the ability to put on a de minimis burden? It would not be a justification, because the kind of people who would actually misuse a gun would not register the gun. But that same argument could have been applied with the handgun registration. That's no different, because we started with basic registration for handguns, bound by prior precedence, as de minimis, and the argument that criminals won't do it anyhow was rejected there, and that wouldn't be any different here with respect to long guns. I thought your argument with respect to long guns was maybe the burden is no different, but the justification is that we've got to have something to make us go. There's something that weighs nothing every time. If you've got no justification, you can't make us even do a de minimis. I've got a justification. As this court said before, the registration of long guns is novel, not historic, and when we do the calculus, intermediate scrutiny, we don't just look at firearm, I mean, handgun registration. This court held to be longstanding in terms of the restrictions, and to make a hypothetical that somehow the police would know where an assassin was in a building because a motorcade might be going by, and to fantasize that a registration record would give any information for that is just not something that would justify this law. And then on the registration, you distinguish between, I guess, ordinary registration and additional aspects of registration that D.C. imposes. Is that right? This court called novel provisions. Yes, Your Honor. Right, and I guess I have a couple of steps. Can you please break down for me exactly what you think is routine registration and what is novel? And then can you tell me, do we look at registration, do we look at their package as a whole, or do we look at it piece by piece and analyze it? If it's the latter, do we have to do some sort of severability argument? I'm sorry, it's a three-part question. I think the court should do both because I think, first of all, long gun registration, as the court said before, might be unjustified. But then if that's upheld, things like canceling your registration every three years is a significant burden that could leave you in a criminal status. Things like taking the gun to the D.C. Police Department where you're taking it on the street and you're taking chances of being robbed or maybe being mistaken by a person who is up to no good and being arrested or worse. That would be harder for long guns than handguns, I should take it, right, trying to get it to the police station? Getting it to the police station, but also once you're there and you tell the police you have a gun. I mean, there's been police stations that have been bad guys who have come in and started shooting. And to require that you suddenly appear with either a handgun or a long gun, and if it's a long gun, the case will be recognized. This is a significant risk and a burden, and the district didn't do anything to show any justification for it. I'm trying to understand. So you're saying that at least that aspect of registration is more on a risk for long guns than for handguns, or it's essentially the same problem? You're showing up at a police station with a gun. It's the same problem in terms of if you're caught with a gun, you might spend two nights in the D.C. jail, or if you go by a gun-free zone, you're subject to 10 years incarceration. So we think the court should look both at long gun registration as a whole, we think is novel, not historic, and should be invalidated. But if it's upheld, there are certain provisions here that we've pointed out that there's been no showing of narrow tailoring, there's been no justification whatever for some of these provisions. Another example would be the prohibition on registering more than one handgun within a 30-day period. One of our plaintiffs wanted to register two handguns within a 30-day period. There's been no showing. The district tried to argue this would facilitate gun trafficking, but Chief Lanier testified it would be highly unlikely any gun trafficker would ever go there, would ever register a gun, register multiple guns, and then traffic them. Which plaintiff was it that tried to register two? Yes. Which one? That would be Aslan Jordan. Can I go back to the registration, taking the guns to the police station? There was a statute that said that may be required. It didn't mandate it. And then I just didn't see, are there regulations? How does someone know whether they have to fulfill that or not? Is there anything in the record? I was confused about that. I didn't see regulations or anything saying who does when other than I thought there was something that sort of said it's they're worried about how it operates. It didn't make sense to me. All of our plaintiffs except one had to do that. And the district counsel can correct me if I'm wrong, but I think the status is that if you move here with a gun and you want to register it, that it's required. And otherwise, if you purchase it through a dealer like there's one D.C. dealer, then it's not required. But my counsel can correct me on that if that's not correct. And how many handguns in D.C. are purchased through that? Do you mean the people who sort of transfer them through it or actually just initially purchased them? People who move here from out of state. Those would be the ones, it's my understanding, who would have to take them to D.C. What about people who live here but have their guns stored outside the state and want to move them into D.C.? They would have to do the same. They would have to bring them to the headquarters. There was a reference to some 900 and some applications, I think, in one year. Is that right? How many people have registered or sought to register guns? John, I don't have the data right at hand. It's in the record. There are hundreds or thousands who have registered. There's data in the record on long guns versus handguns. Virtually no one gets turned down for registration because they're all law-abiding people coming forward. But the figures you state would not be out of the ballpark. The registration requirements have changed, I think. Tell me, I think Hillary 2 was decided in August of 2011? Yes, Your Honor. And it appears the regulations for registration changed effective January 1, 2011. Well, the last amendments were in 2012, the Farm Amendments Act. There were several temporary and permanent provisions that kept changing from the 2008 provision that was here before. At least one thing seems to have changed in the direction of being less onerous than it was when we had the case here before, and that was the amount of training and safety instruction required. Your Honor, there's still some training that's required. There's still a test requirement. Previously the district said you had to go get training from some private individual, and they gave you this list, and they didn't get these people. That seems to be less onerous. That part is, Your Honor. Any other changes material to the case? This so-called ballistic test where you bring the gun police headquarters and they take a sample of the casing. But in terms of bringing it to headquarters, that's still there for the people that we've talked about, so that would not have changed. Whether they took the ballistic test or not would be kind of immaterial. Okay. So those changes eventually have all been in the direction of lessening the burden. They have, Your Honor. Anything that's increased it since the case was here? Nothing's increased. I mean, the main thing that's so different than everywhere else is the long gun registration and the cancellation of registration. Right. Right. You mean the three-year limit? Yes, Your Honor. Yes, Your Honor. That's correct. And then looking at the registration, can, just as a matter of law, do we have to take their registration package as a whole, or do we have the capacity to say, name an address, okay, bring it to the station, not okay? The latter, Your Honor. As a matter of severability analysis, or what is there? Normally, you know, legislatures write laws and then we... We haven't argued non-severability, and, in fact, if it was no longer required that you bring the gun to the station, no longer required that the registration gets canceled every three years, that wouldn't affect the overall scheme. So we've not made the argument. Is there a severability clause anywhere in the law, or how do we know that? That they would have wanted it all or nothing, or they would be okay with splitting it up into pieces? I'm just doing that in terms of the logic of if you have a basic registration scheme like this court upheld before for handguns, and you have these novel provisions that are very unusual for any jurisdiction that would have registration, I believe there is a severability clause, but on the other hand, we've not made an argument that by throwing out some of those novel provisions, that would invalidate the other provisions. By the same token, if long gun registration was not upheld, this court has already upheld basic handgun registration, and we've not made an argument that that would be a severability issue. Okay. Do you object to the photograph with the registration? Because I think that was required before for licensing, which wasn't challenged. Well, what we object to is the following. The National Criminal Instance Background Check System, it's a federal law that exists in every state. You buy a gun. You show a government-issued photograph already. You identify yourself. There's a background check that goes through the FBI's NCIC III, and then there's a NICS index. It's the most comprehensive background check nationwide. And once you've done all of that, it simply duplicates matters to make you come into the district police headquarters and get photographed and fingerprinted there. So our contention is if we're looking at narrow tailoring. The photograph itself, so that you have a photograph on your registration certificate, so when the police are somewhere and need to see your registration certificate, they can see right away that it's you that is registered to have that handgun. But just the photograph. I don't want to talk about the other aspects of it. The photograph is something new. D.C. had registration starting in 1969 and never had a photograph. But the old licensing requirement, the Supreme Court said you weren't objecting to when Heller 1 included the photograph requirement. So I'm trying to figure out why it's different if it's a licensed photograph versus a registration photograph. There was a separate law that you needed a license to carry a gun even in your own home. And I think the district now exempts that from the licensing requirement. I don't think that law is in place anymore. But you didn't object to the photograph itself. Well, Your Honor, I wasn't counsel in that case. I didn't object to anything in that case. In Heller 2, we analogized, in thinking about the burden, we analogized the registration process to that required for getting a driver's license. So what were the changes now that have occurred? What greater burden is there, what elements of this scheme, are there for guns that are not true for the backing it up, but also for a driver's license? And that is a photograph, obviously. Yes, Your Honor. And our position on that is you don't need a driver's license just to keep a car in a garage in your own home without driving it. In terms of traditional gun regulations, most places need a permit to carry a gun concealed outside of the home. And so the distinction is there. The burden would not be that different. But in terms of narrow tailoring, nexus, tight fit, all of that, between merely exercising the basic right to keep a gun in your own home versus carrying it, generally speaking nationwide, you need a permit to carry a gun. And you do not need a permit to keep a gun in your home. And it's the same with an automobile. You do not need a permit. It's not a crime to own a car without a driver's license. You just can't drive it. Right, okay. I take that point, but I'm still looking in terms of measuring burden. I'm still trying to see. My question is unanswered. What is the difference in the registration processes? We would concede in terms of the time one would take or the fact that you take a test and so forth, that the burden is not that different. Is there fingerprinting for a driver's license? Not that I know of, but I'm not familiar with that. The previous opinion also compared the registration to voting registration, firearm registration to voting registration. These are different concepts. With voting registration, you'd never allow a poll tax. And we have equivalent to that here. You would never allow a literacy test, and we have testing here. So sometimes these comparisons just aren't exact, but in terms of burdens, in some cases the burden might not be that different. The car in the driveway, though, I take it that your clients don't just want the gun, but they actually want the ability to use it if needed for self-defense in their home? In their own home, yes, Your Honor. So it's not like a gun is just an invention. You plan to use the guns if needed, but they want to be in a position to use the guns if needed, even in their homes. I mean, people would keep guns for many different purposes for self-defense. This is a facial challenge. I take it some of your clients, if not all of them, would like the ability to use these guns if needed. Hopefully no one ever has to, but if needed for self-defense. Certainly all of them would be in that category. There may be others who would keep guns for hunting or for target shooting or whatever outside the district. Is there anything in the ordinance or statute that says this is a license to keep the gun in your home only? It seemed to me there was an extensive provision about transportation. You can take it outside the district to a place where it would be lawful to use it. If you have a shotgun, you can shoot, track, and skeet in Prince George's County. And there's rules for how it has to be transported, inaccessible in a trunk, unloaded, and so forth. So you can keep it in your home and you can transport it, and that's all. You couldn't take it to your place of business? Your Honor, actually there was a pre-existing law that a registered gun could be kept in a place of business. I'm not aware that that has changed in any way. Yes, Your Honor. Do some of your clients want to be able to transport their guns? I don't know if they want to take them to their business or not, but want to be able to transport them? Do you ever hear they just want the gun in the house just to lay around in the house? Primarily that would be the case, but Mr. Scott, one of the plaintiffs, owns long guns that one could use for hunting or for target shooting that would be done outside the District of Columbia. It's not in the record necessarily that they would be used for that purpose, but one could surmise. All right. We'll give you a couple minutes. Thank you, Your Honor. Ms. Allikin. Good morning.  Lauren Allikin with the District of Columbia. The Second Amendment does not prevent legislatures from enacting gun laws like those that are issued here that further important public safety interests without meaningfully burdening individual self-defense. When this court remanded the registration requirements in Heller 2 for further consideration, it held that they would pass muster under intermediate scrutiny if they were substantially related to an important governmental objective. On demand, the District established two governmental interests, protecting police officers and promoting public safety. Plaintiffs cannot and do not challenge legitimacy of those interests. Or they challenge, as a factual matter, whether this is used to protect police officers. They challenge one aspect of whether or not this protects police officers, and they say that it's a central focus of the record, but it was not. In both the 2008 and 2012 legislative records, the council enumerated several reasons, and this is at JA 12425 in the 2008 report and 163 through 166 in the 2012 report. And they involved things like registration requirements facilitate the return of lost or stolen firearms to the rightful owners, the assistance of law enforcement in determining whether a registered owner has become ineligible to possess a firearm. And, yes, one of these reasons was that it allows officers to determine in advance whether individuals involved in the call have access to a firearm. Well, that's the way it seems to be without any significant deferral of support. Now, Judge Ginsburg, I take issue with that respectfully. So there was testimony in the record from Lieutenant Shelton that there were instances in which MPD officers did check to determine whether or not one had a gun in the home before responding to a call. But even if that never happened, that still doesn't detract from the interest in promoting public safety. And there are innumerable benefits to public safety through a registration scheme. So absolutely, this court can impose the registration scheme purely on promoting public safety, but we also think that there is a sufficient justification for protecting police officers. I'm just trying to figure out, it seems like in almost any case where you're challenging firearm regulations, the government is going to win the interest side of the balance because they're always going to be able to say public safety, health and safety, law enforcement safety, and that these fights are always going to be about tailoring. Does the means justify the end? In particular, are you impinging, infringing on more than is necessary to accomplish those goals? And in this case, it seems like with respect to some things, there's virtually nothing in the record. If a district court was helping you out with things, it was relying on common sense and filling in a lot of gaps. There were a lot of disputes, I thought, about how exactly this would or would not advance an interest. And I'm just wondering why summary judgment would be appropriate. It didn't seem like the district court was taking the record in the light most favorable to the plaintiffs in making these determinations. So what do I do with that? I heard a lot of questions within the question, so I have a few answers if you'll permit me. First, yes, we have the interest on one side, and the question is, is that of narrow tailoring? And so this court in Taylor II found that it wasn't strict scrutiny that would be applied, but intermediate scrutiny. And under intermediate scrutiny, the registration requirements need to be narrowly tailored to achieve the government interest. But what that means in the context of intermediate scrutiny is that the regulations serve aims of protecting police officers and promoting public safety in a manner that would be achieved less effectively without the registration requirements. So there's a one-point evaluation. So you're not burdening more than necessary to accomplish that. There's supposed to be one intermediate scrutiny for all different kinds of constitutional rights. Right, absolutely. And this court in Taylor II was taking that test from Turner I and Turner II, and that was that it doesn't need to be the least restrictive means. That's a strict scrutiny test. But it needs to be a relationship between the interest and the end. And so now I think to get at the meat of your question, we can turn to each of what I see as the five registration requirements at issue. I think first we can start with the registration requirement for long guns specifically. And this court can hold that on two separate grounds. The first, as this court suggested in a footnote in Taylor II, and as the district court found when it dug into this, there's no Second Amendment right that's burdened in the general requirement that long guns be registered. And that is because the registration requirement for long guns is identical to the registration requirement for handguns, which this court previously found in Taylor II. But is the justification the same? Does that matter? It doesn't matter if you're determining whether or not the Second Amendment interest is burdened. If we are looking into intermediate scrutiny in determining how the interests are weighed, there was significant and ample evidence in the record about registration of long guns specifically and the harms that long guns cause. So we have first in the 2012 report, this is JA 177 to 79, an extensive discussion by the council about the unique nature of the district and its susceptibility to violence by long guns. So talking of motorcades, the Holocaust shooting, the South Capitol Street shooting, there are numerous events in the district's recent history where long guns were used to perpetuate crimes. Is there any showing that there aren't the same use of handguns in other jurisdictions? I'm sorry, long guns in other jurisdictions? Are the statistics different? Well, the statistics in terms of the rate of death of long guns I think are not particularly different. As Mr. Halberg said, there were three deaths with long guns. I think there's 350 some. The national rate has had 4,000 deaths. And so the district can rely on its own experience as the site of the government to have particular concerns about motorcades, political assassinations, things like that. But the district can also rely on the fact that long gun violence does cause 4,000 deaths nationally. And so that information would allow the council to determine the registration requirement for long guns is important. You're going to have to, in addition, if you want to sit on this particular point, stand on this particular point, which I think you're going to have to connect potential assassins to the probability that they will register their guns. Absolutely. Thank you for talking about that, Judge Ginsburg. This notion that only law-abiding citizens register guns is a red herring. Under that theory, municipalities would be limited from enacting only those firearms laws that everybody would abide by, and that's certainly not the case. Also, there are other benefits to a registration requirement for long guns. That's fine, but tell me why you would expect the problem of political assassinations to be mitigated to any degree by the registration requirement for long guns. Well, I would point to the council record, the 2012 record, where they found that it allowed police to determine before a motorcade went through who had weapons, and it also just allowed district officers to know generally how many long guns were being registered. Is there any evidence in the record that they actually do check the registrations to see if somebody in the building has a long gun or even a handgun before they set motorcade routes? The only evidence in the record about the checks that were conducted by MPD was Lieutenant Shelton's testimony, and I don't believe that he differentiated between long guns and handguns. It was just whether or not police officers were— But they did it before they set motorcade routes? They check these things and make motorcade routes based on that? I don't believe that there was any evidence in the record, but the mere fact that the executive did not choose to employ a particular means that they're authorized to do by the legislature does not detract from the fact that the council had good reasons to empower the executive branch to undertake those checks, should they think it necessary. There's a tension with narrow tailoring. I don't believe so. I mean, the Constitution permits a wide range of policy choices, and so the council here was allowed to— Was it narrow or was it wide? I mean, I thought the word was narrow. Well, it's narrow tailoring, but it's not the least restrictive alternative. I understand that. And so— If it's really an important enough interest, you think you ought to do it. But, I mean, the fact that you don't do it either suggests that this isn't something that's that important to you all or that you think this is helpful in that, I mean, it's clearly an important interest to protect all lives. Well, I don't think they were saying it was in the record one way or the other. The record was silent on this. So this is a justification that the council had, but it was one among many. And if you look at the testimony from— I'm not at all saying that there's a rational relationship. I'm saying that there is a substantial interest that is being furthered. And Chief— No, that could be furthered, and that is being furthered. Did testify about what MPD's policies are, and she testified, I believe, that the type of firearm is largely irrelevant for purposes of registration and that all firearms pose a threat to the public, and therefore all firearms should be registered similarly. You also have linear results testifying, and this is at JA 396 and 97, about how long guns are more dangerous. And so if a handgun requirement or registration requirement doesn't impose burdens on the Constitution, then as well a long gun requirement. Now, if I can turn next to the requirements of a background check, fingerprinting, things like that, plaintiffs don't take issue or argue that background checks themselves are unconstitutional. They just would prefer one form of a check over another. They want this NICS check, which is the National Instinct Criminal Background Check, over the local checks that the district conducts. But there was extensive testimony that local checks are actually more effective, and jurisdictions that have local checks have lower rates of gun violence than ones that just rely solely on the national standard. Also, there was—with regard to fingerprinting and photographing specifically, there was information in the record that fingerprinting is what allows the district to conduct a more comprehensive local check than the national check. The national NICS check is based on things like name, birthdate, Social Security number, data that can be forged if someone wants to, whereas fingerprints are not as easily forged. Once you run those through the system, it checks a variety of law enforcement databases, it checks superior court dockets, and it ensures that an individual who is trying to register a weapon has not become ineligible to do so. And so the fingerprints allow the districts to undertake this more comprehensive check that they can then ensure that only individuals who are law-abiding citizens who are eligible to own weapons can register those weapons. The GAO also had a report that was relied upon. I believe this is JA-415. It was Webster's testimony. I'm relying on the GAO's report that the use of fingerprints prevents things like prospective purchasers from frauding the office and trying to register weapons when they're not allowed to do so. Next, if we could turn to the – I guess actually it's just staying on this broad swath of registration requirements about bringing the firearm to a DDT register. My understanding of the way that it works is consistent with Mr. Halbrook's, that if you are buying a weapon through a federally licensed dealer and therefore you have a third party that's verifying what that weapon is, there's no need to bring in the weapon. But if you are bringing in a weapon that has not been – the AR-24 had its credentials checked out by the district, then you may be required to bring that weapon in for an MPD officer to look at it. What do you mean, credentials checked out by the district? Well, if it comes from a federally licensed dealer, the district can trust that the federally licensed dealer is representing the gun to be the Megan model. When they register, do they have to give a serial number for the gun? I believe they do. A serial number, like a VIN number on a car, it will actually identify, I assume, precisely what make, model, year. Absolutely. But the only way that MPD can ensure that that serial number has not been forged, that someone's not providing a false one, is to bring the weapon in. Why would somebody register falsely? I mean, they accomplish nothing at that point. They haven't complied with registration requirements. If you're going to violate the law, just don't come in at all. Do you have any evidence that anyone has ever tried to register a gun falsely? There was evidence, and I'll give this to you, I've seen operations that Webster alluded to, but also gun dealers themselves are not necessarily trained to look at false ID documents. So if you purchase a gun at a false… I'm not talking about a false person. I'm talking about someone's come in, they're doing their fingerprints, they're getting their photograph taken, but I'm going to give you the wrong serial number so I'll register the handgun and not the long gun. What have they possibly accomplished at that point? Well, certainly I have nothing to point to in the record other than Webster's expert testimony on this, but it also prevents mistakes. And Webster said, well, it's a serial number. Then MPD can verify that it is precisely the weapon. MPD can also then assure that… I'm sorry. I really don't understand this thing. So if someone writes down their application and serial number, and they write down the wrong application, or they write down the wrong serial number, MPD then can check the weapon against what's on the application and correct mistakes. Also, when MPD looks at the weapon… Is there any evidence that it's happened? I'm really trying to ask, you all had a burden here to show a purpose for doing this, and I'm having trouble understanding that. What evidence is there in the record that this is a real problem? I mean, you can bring guns in, and clerks can write down wrong numbers too. So what exactly evidence is there that this is a problem that you need this aspect for? The district was not required to show that there was a rampant problem or wait until there was a rampant problem to take measures to prevent these problems from occurring. Was there any problem? Was there one problem? Not a rampant one. Was there one time it went bad? I don't believe there's anything in the record about a particular instance of a serial number being forged. No different than that. I don't have that. But MPD can put its eye on the weapon and make sure it hasn't been changed in some way, that it hasn't become a solid-off shotgun, that it is the weapon that it is represented to be. And so I think that also another important point is that this isn't a requirement. This is discretionary. MPD may require the individual to bring in the weapon. I'm not sure that helps because at least the standards, as I saw them, for when they make you bring them in or not seem entirely arbitrary. I don't see it as arbitrary. I mean, my understanding, which is that of Mr. Halpert, is that when you are buying a weapon from a federally licensed firearm dealer, you will not be required to bring in the weapon. But if you are getting it from some other means, like you're relocating to the district with it or you're buying it from someone who's not a federally licensed firearm dealer, the district has an enhanced interest in making sure that you are registering the gun that you say that you are and that it is in the form that it is supposed to be. Now, if we could also move on to the renewal requirement. I don't have an understanding about bringing the weapon in. If you are somebody who's supposed to bring the weapon in, perhaps because you're moving here from out of state. You've explained the purpose, but what I don't understand is how the person who's bringing the gun into the MPD is protected, as it were, from being arrested for having an unregistered gun while on the way to the registration station. There is a safe harbor in the registration requirements that allows someone to bring a weapon into MPD for the purposes of registering the weapon. Why don't they show that that's what they're doing? I suppose they would have their registration paperwork and they would have all the materials that they're supposed to bring with them when they're registering the weapon in addition to having the firearm in a case and concealed in the way that it's supposed to be. What keeps them from getting shot on the way in? If they've got a big long gun, you can't hide. Have you seen while approaching the police station? Understandably, in this modern world, police are going to at least become acutely cautious and protective if someone's approaching the police station with a long gun. Not at all, Judge Millett. The gun has to be disassembled and carried in a case in order, I think, to take advantage of the safe harbor provision. This isn't a choice of someone getting off the Metro shotgun in hand. They're coming in with their gun disassembled in a case. They then present their information to the MPD when they get there and say, I'm here to register my weapon. I have my weapon with me. It's no different than when law enforcement officers with weapons come into any security checkpoint and say to the security officers there, I have a gun. I am lawfully authorized to carry it for this purpose. And then they go on their way. There are administrative processes here to deal with these kinds of situations. But if we could turn to the registration or the re-registration requirement, there was ample testimony in the 2012 council record to show that the old law, which didn't require re-registration, was ineffective. There was testimony that thousands of registrants had moved, had died, had become ineligible to register weapons or had even lost those weapons and hadn't notified MPD of that fact. And so a simple, common-sense way to approach this is to have a re-registration requirement every three years where an individual who still resides in the district, who is still eligible to purchase or to possess a gun, will tell the MPD that they want to continue having a registration permit for that weapon in the district. And it's not a burdensome process because this is a process by which, post-2011, you are mailed the forms to register your gun. So it's not a case that you have to sit there marking the days off on your calendar lest you be caught unaware that your gun has fallen out of the registration window. You receive the paperwork from MPD and from the district, and then you can complete that paperwork online. In that way, it's much like renewing your registration for your driver's license or for your car. And so it's a process that takes care of a real and considered problem that the council identified and does so in a way that is not burdensome. How much does it capture that you wouldn't already capture just by running the checks yourself on the records you already have? It would be inefficient to do so. The district is uniquely transient in that people are always coming in and out, especially for political jobs. And so the district, to be short, could every three years run checks on everybody in their database, but they wouldn't need to because there are people that have moved out of the district, there are people who have sold their weapons, there are people who have left the district and registered their weapons elsewhere. And so this is really just about what is an efficient mechanism for allowing an individual to have a permit or to possess a gun registration. And then the final piece is training and safety requirements. And this is one where, yes, it's common sense that someone who wants to possess a gun should know how to use it, should know how to keep it safely, and that is because a gun is a dangerous weapon. And all law enforcement agencies that require or authorize individuals to have weapons require some sort of training. And here the training, and I think this is an important point because Judge Ginsburg brought it up previously, the training and education requirements were actually reduced between the previous gun laws in 2008 and the 2012 laws. It used to be that there was a requirement of five hours of training, you had to use an approved person. Now it is a free course available online that takes between 30 minutes and an hour to complete that covers what the district thinks are the important things they would reasonably assume a gun owner should know about gun handling and gun safety. And the plaintiffs don't challenge those as being unduly burdensome. So is it a different test then that deals with knowledge of the district's gun laws? My understanding is that the one-hour course covers everything the district wants you to know about gun laws and gun safety. And also the registration process itself was found by both the counsel and the experts to increase awareness about the gun laws in the district. So the requirement that guns be registered generally promotes people to understand what the laws are and then there is this one-hour free online course that people can do. They're required to do it once, but they can certainly do it at their leisure to refresh if they want to do so on a periodic basis. Do I need to do it to re-register? I don't think you do. I believe it's a one-time course. Now it's available because it's free and online. You can do it as many times as you would like, but the district itself only requires you, I believe, to do it once. And then finally, the one pistol per month requirement. There were numerous empirical studies in the 2012 legislative process. It's just pistol, right? It's one gun per month. The district court found that it was one pistol per month, and that's not something that the plaintiffs contend on appeal. I do believe it is one pistol per month, in which case it wouldn't be involved with long guns or guns of use in hunting, things like that. So it just doesn't apply to long guns? My understanding, and that of the district court, was that it applies to pistols only and that it's one pistol per month. But there was ample evidence within the 2012 record, relying on the experiences of both Virginia and Maryland, that having limitations on the number of firearms that can be registered in a particular time reduces illegal trafficking of weapons, and that both purchasers are 33% more likely to do so. I mean, it seems to me there's a difference between regulating commercial sales, which is what a purchasing requirement is. And Supreme Court in Heller specifically said, and we're not saying anything about the ability of government to regulate commercial sales, that the registration requirement regulates how many you can possess in your home. Does it? Yeah. Is there a difference? Well, it limits the number that you are allowed to register at any given point. There's no requirement on the number of guns that one can amass at any given time. It's just that they can register them. Well, I have to live here long enough. Well, or someone relocates to the district. They are allowed to register all of their weapons after relocating to the district. Not relocating. They live here. They're just after Heller now. But if they live here, they are restricted, we think, quite reasonably to registering one weapon. But you're not regulating commercial transactions at that point. Aren't you regulating the core right to possess guns in the home? I think that the expert testimony of Mr. Vince is especially on point about this. He relied both on the study, some of which I cited, and his own personal observations from Virginia having a similar law. But when he said it was a registration law or a gun sale purchase limit law. I thought Virginia had a purchase limit, not a registration a month rule. You may be right. The Virginia law has been repealed. But I think you may be right that it's about purchases rather than registrations. But what Vince said in his expert testimony, and this is a JA 404-05, was that the unique nature of D.C., where firearms are by and large coming from out of the jurisdiction, the district doesn't have any authority to regulate the guns that are being purchased elsewhere. So registration is the only way for the district to control, since it can't legislate the purchases that take place in Maryland or D.C. And so the one-gun-a-month registration requirement allows the district to know who is registering their weapons and to ensure that someone's not impermissibly registering multiple weapons when there's no need and, in fact, no protected secondary issue. I guess it doesn't hide, of course, what happens. The whole justification for registration is we want to know what guns people have, maybe where they live with those guns, if a motorcade's going by. We want to know, we want to make sure people are conscious of the gun laws, have gone through the training if they have them. All of those weigh in favor of register all the ones you have and don't have to do it piecemeal over time. It just seems to me now you're saying registration is a means of stopping people from having the guns altogether. No, no, certainly, Judge Millett, you can register all the weapons that you have. This may limit the amount of weapons that you purchase to one a month, because that's what you are allowed to register, but I don't think the district's interest in reducing the number of guns within the city's jurisdiction is somehow suspect, as long as they're protecting the individual right to have a gun for self-defense. An individual doesn't need 15, 20, 30 guns for the individual right of self-defense. Well, someone wanted to register two here. You register two, you have to do so in a period of 31 days or 32 days. You can do one a month. So if you want to purchase a weapon, you can purchase your weapon, register it, and then we think a short time before you come and re-register it. That might be a fine, rational basis, but I'm not sure why given all the benefits you tout of registration, why you want to cap it other than I think because you can't, you said, you can't regulate the sale process, which Heller in the Supreme Court said you could. It wasn't even open for government to do. So why do you have to do this backwards thing when all its sole effect is to limit the possession of guns in the home? Because under intermediate scrutiny, the district is allowed to carry out a gun policy that it thinks would increase public safety as long as it's not doing so in an unduly burdensome way. This doesn't need to be the least restrictive alternative. It just needs to be something that is substantially related to the government's interest, and the government has an interest here in ensuring that, yes, it's under-registered, but also that individuals aren't amassing arsenals of weapons more than seldom here. The question is, are you infringing more than necessary? And so if you say, well, you know, we'd like to slow this process down, in the process you're keeping somebody from having what the Supreme Court told us in Heller, bound by that, is that this is the core right of the Second Amendment. Wait 30 days to exercise your core right under the Constitution. There's no 30-day limitation. You can register that one gun immediately and thereby exercise your core right. If you would like a second pistol as opposed to a long gun, we think that a waiting requirement of 30 days to re-register that is not unduly burdensome under the Second Amendment. Do you have a position on the severability issue, if parts of it seemed okay and parts of it didn't survive? Two responses to that. First, the Supreme Court in Heller presumed that there was a severability analysis because it did not chart down the entire scheme. And secondly, there is in the D.C. Code a general severability provision. So I did not check before this argument whether there is a particular and specific severability provision in the gun law, but there is generally in the D.C. Code. So we think that if this court is troubled by any of these regulations, we think that they shouldn't be because there's ample evidence, both in the record and in the expert testimony, that shows that these are reasonable restrictions that do not burden. But if this court felt like there were, it could sever those few that it found to be overly burdensome from the core of the law. And can they re-register all the guns at once? You don't have to do that. You can re-register at least 12 at a time on the same form. Can you fill out two forms and just re-register them all? I don't believe there's anything in the record that speaks to that. I just know that the form allows you to do 12 at once. So it may be that you need to sort of fill out successive forms or call in PD for guidance on how to do that. But I understand that you can do at least 12 on one form at one time. Counselor, where is the one weapon per month provision? So it's 7-2502.03E. No, I apologize. But it is .03 subsection E. Ah, okay. The chief shall register no more than one pistol per register, and any 30 will prove an exception for bringing them in. That's not a state. Someone who relocates to the district from Virginia or Maryland can register all their weapons at once. So it's your view that there's no restriction on long guns. That's my view, and it's also the district court's view, that it really is limited to pistols. Well, the district court, in the relevant paragraph, talks about firearms. It never says that I couldn't find any use of distinguishing firearms. I believe it was early on in the opinion. I don't have the exact page with me, but I can provide it to the court. The district court did address this and say that it was one pistol per month. But then I think it used firearm just as a synonym for going throughout. There's no other place for the number of long guns. Not to my knowledge. The plaintiffs haven't raised there being any. Does the court suggest there's a lesser safety concern with long guns? I don't believe so. I think that it may very well be that people have, as a matter of history, I can't say the hunting buff, but different types of long guns for different purposes and different types of hunting, whereas a pistol in the home, for the poor right of self-defense, it is a handgun. There might be reasonable restrictions on limiting those, one every 30 days, whereas long guns, since you might need one for pheasant shooting and one for geese or one for foxes, that you might have numerous guns. Does it follow from your reasoning, then, that the district could say one pistol per home? It's an interesting question. I think it would be a much closer case if the district were to say only one pistol, I think for individual, I don't think they could say per home necessarily. But that's not the restriction that we have here. Someone can amass 12 handguns in the course of the year, and they can also bring in as many handguns. They can move the pistol to the hundred handguns. For 30 days, they have one handgun. And that one handgun is sufficient, in our estimation, to protect the individual right of self-defense within the home. Can you constitutionally do it for 30 days? You have to answer that question, I think. Right, and we think that we can. It's the right that is protected is the right of individual self-defense within the home. One weapon allows someone to sufficiently protect that right. Well, then you could limit it to one per home. You just said it. I don't know. I don't want to take this from what we've argued, that we're one per home. I think that here we don't need to get into that much closer question. It's just about a 30-day requirement, and doesn't limit the total number of weapons that one may amass or the total number of weapons one may move to the district with. I don't understand that answer, though, because you just – I thought you just said that, yeah, we could limit it to one per home. I think that is protected by the Second Amendment, that if you have a right to have a weapon in the home for purposes of self-defense, that a legislature could, if it had a sufficient basis to do so, and saw that there was a problem of too many guns, that they were getting lost at a higher rate, stolen at a higher rate, ending up in illegal circumstances, that they could have a basis for articulating a requirement of only allowing the purchase of one gun or the possession of one gun in the home. But that's not the judgment that the council here has made. The council has made a much broader judgment, which just says – Would this record support that judgment? Well, I think this record doesn't need to support that judgment in your hypothetical. Would it or wouldn't it? It would if someone lives here for 30 days. You said it's a transient place. Someone moves in here, they're only living here for 30 days, they're working on a temporary special person coming in for some Senate hearing. For 30 days, they're out. Their entire life in D.C. is 30 days. They're limited to one gun for self-defense. Yes, and I think the record here does support the council's – If you go for 30 days, you're going to – – considered judgment, which was for those staff grants, that having multiple guns increases suicide, homicides, illicit trafficking, and that having restrictions on the amount of guns that can be registered will seek to prevent the misuse of firearms, especially when it comes to children. And I think that comes from Jones' testimony. And then it also – Vince's testimony, both of it on studies and on personal observation, that limits on purchase and registration are one of the most effective methods of disrupting illegal interstate trafficking of firearms. So I think that on the narrow question that you have raised, the person who lives in the jurisdiction for 30 days, there is an ample record, both in the 2012 council's legislative record and in the testimony of the three experts with a combined 70 years of law enforcement experience and Daniel Webster, who is our academic expert. Now, I know I'm well over my time. If the court has no further questions, we would ask that the court affirm. Thank you. Thank you. Does Mr. Halbrook have any time? All right, why don't you take one minute. One minute. Thank you, Your Honor. Just back to basics, if I could just cite to the record, page 442. The district concedes that the registration records are not used to prevent a crime. They're not used to determine who committed a crime. And from Chief Lanier on page 615, they're not used to solve long gun crimes except for possessory offenses. And then one other cite, 763 of the appendix, the district checked with other jurisdictions and no jurisdictions nationwide could be found where the law enforcement officers would check to see who had any kind of registered gun. And they assume they're framed in a dangerous situation. And the people who are committing crimes don't register their guns. It would be totally unrealistic to think that criminals would have registered guns and you would find out about them on the way to the scene. Judge Kavanaugh, in his dissenting opinion, made that point. And I think police departments generally recognize it, but nobody assumes a registration record would reflect that there would be no gun at the scene. What did you put in the record, if anything, to dispute the fingerprints that allow them to run a more thorough check of local records than simply the Social Security number and the national check? First of all, the NICS, the national check, also checks local records. If it's unlawful locally to acquire a gun, the background check will be turned down. And, of course, at the point of sale, the district is free to make any check that it wants. And, in fact, this is what perplexes us about the re-registration. They tell us they constantly check records of the registered guns. And when they say that what makes it more efficient is to have re-registrations so they can check to see whether there's a legal disability that's come up, we've never seen an answer, either in the briefs or today, how that somehow makes it more efficient when they're checking records all along. Did you dispute the evidence that they had in the record that fingerprints identified a lot more folks that shouldn't have guns than just a national check based on a Social Security number? There's nothing in the record that that discovered more people who shouldn't buy guns. Those were theoretical arguments that were made in the declarations, but there was no evidence. There was no evidence that there was a lower rate of homicides in those jurisdictions. Well, the District of Columbia does fingerprints, and it's got a lot higher rate of homicide than jurisdictions like Maryland and Virginia that do not. I mean, they have some expert testimony about lower and higher homicides, but when you look at actual experience in the district, it doesn't pan out. Well, the data there, you're right, and, of course, you look at that and say it shows that the present requirements are not effective or useless, and then the district looks at it and says, well, we just need higher requirements, and for a longer period of time. If something doesn't work, just keep trying it more. I think that came from Abraham Lincoln that, you know, there's just no nexus between registration and the crime, and I think with long gun registration, that's so clear. They're very rarely used, and elements of the novel registration requirements like re-registration, cancellation, and all of that, they just haven't made a showing here. As the king said about Humpty Dumpty, all that shows is we're going to need more horses and more men. Thank you, Your Honor. Thank you.
judges: Henderson, Millett, Ginsburg